UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CLAUDE HARRIS | § |
| | § |
| vs. | §   NO:  MO:21-CV-00143-DC |
| | § |
| BOBBY LUMPKIN | § |

### ORDER DENYING PETITIONER'S 28 U.S.C. §2254 AND DENYING A CERTIFICATE OF APPEALABILITY

On this day the Court considered Petitioner Claude Harris' (Petitioner) Application for Writ of Habeas Corpus by a Person in State Custody filed pursuant to 28 U.S.C. §2254 (§2254), and Respondent Bobby Lumpkin's (Respondent) Answer with Brief in Support, and Petitioner's Reply to the Respondent's Answer. [docket numbers 1, 12, & 14, respectively]. After due consideration, the Court finds Petitioner's §2254 is not well-taken and is denied.

### I. Jurisdiction

Petitioner was sentenced from the 142nd Judicial District Court of Midland County, Texas, which is within the boundaries of the Midland/Odessa Division of the Western District of Texas. This Court has jurisdiction over the matter, as jurisdiction is proper in either the district where the person is in custody or in the district in which the state court convicted and sentenced him. *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

### II. Background and procedural history

Petitioner is imprisoned pursuant to a judgment and sentence for aggravated rape from the 142nd Judicial District Court of Midland County, Texas, in cause number 6958. On November 1, 1978, Petitioner was indicted for the felony offense of aggravated rape. On November 14, 1978, Petitioner entered a guilty plea, and the trial court sentenced him to forty-five years of imprisonment within the Texas Department of Criminal Justice.

On April 24, 1990, while incarcerated, Petitioner was also convicted for possession of a controlled substance and sentenced to two years of imprisonment. This two-year sentence was stacked onto his forty-five year sentence, which resulted in a total sentence length of forty-seven years.

Petitioner was released on mandatory supervision on April 23, 1996. However, Petitioner's mandatory supervision was revoked on March 9, 1999. Upon revocation, Petitioner forfeited the time spent on mandatory supervision and all previously accrued good-time.

On May 30, 2012, Petitioner was then released on parole. And again, Petitioner's parole was revoked on June 26, 2018.[1] Pursuant to Tex. Gov't Code §§508.283(b) and 508.149(a)(8), Petitioner did not receive "street time"[2] for his time spent on parole. Furthermore, under Tex. Gov't Code §498.004(b), Petitioner forfeited previously accrued good-time credits. However, Petitioner did receive jail credit for the amount of time he spent confined between the dates of execution of pre-revocation warrants and their withdrawal.

---

[1] While mandatory supervision and parole are different, the difference lies in the Texas Board of Pardons and Paroles' amount of discretion, and the underlying process for becoming eligible and being granting release. *Coleman v. Dretke*, 395 F.3d 216, 219 n. 1 (5th Cir. 2004); *Jackson v. Johnson*, 475 F.3d 261, 263 n. 1 (5th Cir. 2007). In these cases, dealing with inmates already released on either mandatory supervision or parole, the Fifth Circuit has indicated in dicta that the difference between mandatory supervision and parole is not legally significant. The Court cannot find any support in case law or state statutory law for the idea that there is a difference in how the mandatory supervision and parole programs are administered once release has been granted. Mandatory supervision is treated as a form of parole by Texas law; a prisoner released on mandatory supervision is "considered to be released on parole." Tex. Gov't Code §508.147(b). In either form, defendants serve the remainder of their sentence "under the supervision and control of the pardons and paroles division." Tex. Gov't Code §508.001(5)–(6).

According to the Texas Department of Criminal Justice, mandatory supervision is defined as "[a] type of release from prison provided by law for restricted categories of offenders. Eligible offenders are released on [mandatory supervision] when their calendar time served added to their good time credit equals the length of their prison sentence." Parole, on the other hand, is defined as "[t]he conditional release of an offender from prison, by a [Texas Board of Pardons and Paroles] decision, to serve the remainder of his/her sentence under supervision in the community." *See* "Definitions and Acronyms," Tex. Dep't of Crim. Just., http://tdcj.state.tx.us/definitions/ (last visited Feb. 11, 2022).

[2] The term "street-time credit" refers to calendar time a defendant receives towards his sentence for days he spent on parole or mandatory supervision. *Ex parte Spann*, 132 S.W.3d 390, 392 n. 2 (Tex. Crim. App. 2004).

On October 2, 2019, Petitioner submitted a Time Dispute Resolution Form. The Custodian of Offender Records received Petitioner's Time Dispute Resolution Form on November 15, 2019, and it was denied on February 25, 2020.

Petitioner then filed a state habeas application on November 22, 2019. In his application, Petitioner's sole claim was that he was "eligible for immediate release to mandatory supervision." Specifically, he alleged that his total time credits equated to ninety-six years, one month, and eleven days. The Texas Court of Criminal Appeals (TCCA) denied this state writ without written order on April 29, 2020.

On September 16, 2020, Petitioner mail-filed an earlier §2254 in which he challenged the denial of his release to mandatory supervision. *See Claude Harris v. Bobby Lumpkin*, No. 7:20-CV-00229-DC (W.D. Tex. 2020). Soon after, on September 29, 2020, Petitioner asked for a voluntary dismissal so he could exhaust any additional claims in state court. Accordingly, on October 8, 2020, this Court dismissed Petitioner's §2254 without prejudice.

Upon the dismissal of his federal habeas petition, Petitioner filed another state habeas application on October 21, 2020. In this petition, Petitioner claimed that his due process rights had been violated during his parole revocation proceedings, that he was being confined in violation of the "mandatory supervision 1/3 law and the Ex Post Facto Clause," and that his parole revocation was illegal because he had "long since discharged his 47 year sentence." On August 19, 2021, the TCCA denied this state habeas application without written order on the findings of the trial court without hearing and on the court's independent review of the record.

Petitioner then mail-filed this §2254. Therein he raised a single claim that he has "long since discharged his sentence," and that the "parole board is using ex post facto laws and rules to keep Petitioner illegally confined."

### III. Statute of limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) specifies a period of limitations for federal habeas corpus applications:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d).

### IV. Calculation of statute of limitations

The one-year period of limitations in §2244(d)(1) is to be construed as a statute of limitations, and not a jurisdictional bar. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). The tolling provision of §2244(d)(2) is only activated with a "properly filed application for State post-conviction or other collateral review." *Duncan v. Walker*, 533 U.S. 167 (2001) (prohibiting tolling of one-year limitation, under §2244(d)(2), for federal habeas petition filing as it is not an

4

"application for State post-conviction or other collateral review"). A court may entertain a habeas petition after the statutory limit has passed in *rare and exceptional circumstances* based on reasons of equity. *Davis*, 158 F.3d at 811 (emphasis added).

Petitioner has not alleged any unconstitutional state action prevented him from filing a timely federal habeas petition under §2244(d)(1)(B). Additionally, his claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review under §2244(d)(1)(C). Lastly, Petitioner has not alleged his limitations period should be based on a different factual predicate under §2244(d)(1)(D). Therefore, given the facts, the statute of limitations in Petitioner's case started to run, at the latest, when Petitioner's conviction became final or when Petitioner could have discovered, through due diligence, the factual predicate of his claims. 28 U.S.C. §2244(d)(1)(A)–(D).

As Petitioner does not attack his conviction, the one-year period of limitations ran from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2254(d)(1)(D); *see Preiser v. Rodriguez*, 411 U.S. 475 (1973) (holding §2254 habeas petition is sole remedy for state prisoner seeking speedier release from imprisonment based on application of good conduct time); *see also Heiser v. Johnson*, No. 00-10408, 263 F.3d 162, 2001 WL 803542 (5th Cir. 2001) (unpublished) (In the context of parole-revocation proceedings and the resultant loss or denial of good-time or street-time credits, courts have determined that the very latest date, on which a petitioner could or should have been aware of the loss of time credits under subsection (D), was when the Board revoked his parole and recommitted him to TDCJ-CID); *see also Alvarez v. Stephens*, No. 3:13–CV–5003–D, 2014 WL 4814466, at *2 (N.D. Tex. Sept. 29, 2014) (citing *Biggins v. Dretke*, No. 3:03–CV–2005–P, 2004 WL 1898255, at *2 (N.D. Tex. Aug. 24, 2004) (finding that on date of

5

parole revocation petitioner knew, or could have known through the exercise of due diligence, of the loss of street-time credits); *Tweedy v. Dretke*, No. 4:03–CV–520–A, 2003 WL 22724659, at *3 (N.D. Tex. Sept. 15, 2003) (same)).

Because Petitioner's allegation derives from the forfeiture of good-time credits and street-time as the result of his parole revocation, the factual predicate for his claim could have been discovered through the exercise of due diligence, at the very latest, on June 26, 2018, the day his parole was revoked. It is at this time that Petitioner could have discovered, through the exercise of due diligence, that he had forfeited his previously accrued good-time credits and street-time. Consequently, the one-year limitation period for filing a federal petition began no later than June 26, 2018, and ended June 26, 2019, unless Petitioner had properly filed an application for State post-conviction or other collateral review to toll the running of the limitations period. 28 U.S.C. §2244(d)(2).

In this case, Petitioner submitted a Time Dispute Resolution Form on October 2, 2019, and subsequently filed two state writs. Typically, a petitioner's pending Time Dispute Resolution Form tolls AEDPA's statute of limitations. *Stone v. Thaler*, 614 F.3d 136, 138 (5th Cir. 2010) (concluding that because a Time Dispute Resolution Form impedes a prisoner's ability to file for state habeas relief, AEDPA limitations are tolled during a time-served credit dispute). However, because October 2, 2019 was ninety-eight days past the June 26, 2019 filing deadline, Petitioner's Time Dispute Resolution Form (and subsequent state writs) failed to toll the AEDPA statute of limitations deadline. Thus, as a matter of law, his §2254 is untimely. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under §2244(d)(2) because it was not filed until after the period of limitation had expired"); *see also Flores v. Quarterman*, 467 F.3d 484, 485–86 n. 2 (5th Cir.

2006) (same) (citing *Scott*); *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013) (same) (citing *Scott*). In effect, because the limitation period was not tolled by the state filings, Petitioner's §2254 is barred by the AEDPA statute of limitations.

V.      **Equitable tolling**

Petitioner has not shown this Court that the one-year time limitation set forth in 28 U.S.C. §2244(d)(1) should be equitably tolled by this Court due to a rare and exceptional circumstance presented in Petitioner's case. It is well-established that in appropriate circumstances the AEDPA's one-year statute of limitations can be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 649 (2010). However, the petitioner bears the burden of establishing entitlement to equitable tolling in the AEDPA context. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000). Petitioner has not alleged: (1) the State created an impediment to the filing of this action in violation of the Constitution or laws of the United States; (2) a new right has been recognized by the Supreme Court which has been made retroactively applicable to this case on collateral review; or (3) that he could not have discovered the factual predicate of the claims presented through the exercise of due diligence.

Petitioner's allegation that he had no knowledge of the law or how to proceed in filing a *pro se* habeas application is insufficient to warrant further equitable relief. *See Flores v. Quarterman*, 467 F.3d 484, 486 (5th Cir. 2006) (quoting *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002)) ("We have previously 'made it clear that a lack of knowledge of the law, however understandable it may be, does not ordinarily justify equitable tolling.'").

Petitioner's *pro se* status does not merit equitable tolling, *see Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999), and it is well-settled that ignorance of the law does not constitute a "rare and exceptional circumstance" for tolling purposes. *See, e.g., Fierro*, 294 F.3d at 682;

7

*Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (neither inmate's ignorance of the law nor inadequacy of services of inmate law clerk who helped draft his habeas petition entitled petitioner to equitable tolling of the limitations period); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); s*ee also Saahir v. Collins*, 956 F.2d 115, 118–19 (5th Cir. 1992) (neither prisoner's *pro se* status nor ignorance of the law constitutes cause for failing to include a legal claim in his prior petition).

Petitioner's filings, even when liberally construed in light of his *pro se* status, do not present "rare and exceptional circumstances" warranting equitable tolling. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (to be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."); *see also Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755–756 (2016). Unexplained delays do not evince due diligence or rare and extraordinary circumstances. *Fisher*, 174 F.3d at 715; *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) ("In order for equitable tolling to apply, the applicant must diligently pursue ... [habeas] relief.").

Regarding the "pursuing his rights diligently" requirement, Petitioner must demonstrate "'reasonable diligence,' not 'maximum feasible diligence.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Holland*, 560 U.S. at 653). "[N]either excusable neglect nor ignorance of the law is sufficient to justify equitable tolling." *Id.* at 503 (quoting *Fierro*, 294 F.3d at 682). And this is simply not a case in which Petitioner pursued "the process with diligence and alacrity." *Phillips*, 216 F.3d at 511.

Petitioner inexplicably waited ninety-eight days before pursuing relief. Clearly this unexplained delay does not exemplify due diligence. Here, the Court finds that Petitioner failed

to file his §2254 in a timely fashion and does not qualify for equitable tolling. For equitable tolling to apply, the applicant must diligently pursue his §2254 relief. *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). "[E]quity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989). This Court finds Petitioner failed to pursue federal relief with diligence. The party seeking equitable tolling bears the burden of showing entitlement to such tolling. *United States v. Petty*, 530 F.3d 361, 366 (5th Cir. 2008); *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Because Petitioner has not carried his burden to show that equitable tolling is warranted, this Court, in its discretion, will refuse to apply equitable tolling. Petitioner has not shown that any principles of equitable tolling save his §2254; consequently, his §2254 is time-barred.

## VI. Certificate of appealability

Because the habeas corpus petition filed in this case is governed by AEDPA, codified as amended at 28 U.S.C. §2253, a certificate of appealability (COA) is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. §2254 or §2255 require a COA). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals ....'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. §2253(c)(1)).

A COA will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. §2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a COA, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a COA will not issue in this case.

### VII. Conclusion

Accordingly, it is hereby **ORDERED** Petitioner's Application for Writ of Habeas Corpus by a Person in State Custody filed pursuant to 28 U.S.C. §2254 is **DENIED** and **DISMISSED** and a **CERTIFICATE OF APPEALABILITY WILL NOT ISSUE** in this case.

It is so **ORDERED**.

SIGNED this 13th day of February, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE